IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMBER WOODS,

        Plaintiff,

vs.                                                               1:20-cv-00529-PJK-LF

BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF BERNALILLO o/b/o
BERNALILLO COUNTY HOUSING DEPARTMENT, and
BETTY VALDEZ, in her representative capacity,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me on Plaintiff Amber Woods' Motion for Preliminary Injunction, which was filed in state court on May 26, 2020. Doc. 6-1. Defendants removed the case to this Court on June 2, 2020, Doc. 1, and filed a response to the Motion for Preliminary Injunction on June 9, 2020, Doc. 7. Ms. Woods filed a reply on June 23, 2020. Doc. 14. The Court offered defendants the opportunity to file a surreply, but defendants declined the opportunity to do so. *See* Doc. 19 at 2. Ms. Woods filed a Notice of Supplemental Authority on July 6, 2020. Doc. 25. Defendants filed a response to the Notice of Supplemental Authority on July 13, 2020. Doc. 30.

The Honorable United States Circuit Judge Paul Kelly, Jr. referred this motion to me pursuant to 28 U.S.C. §§ 636(b)(1)(B), (b)(3) and FED. R. CIV. P. 72(b) to conduct hearings, if warranted, and to perform any legal analysis required to recommend a disposition of the motion to the Court. Doc. 10. I held a hearing on the motion on July 7, 2020. Docs. 29, 34. Having considered the parties' submissions, the relevant law, and the arguments presented at the hearing, I recommend that the Court GRANT the motion.

I.      **Statement of Facts**

Ms. Woods received Section 8 housing assistance[1] from the Bernalillo County Housing Department ("BCHD"). Doc. 6-1 ¶¶ 1, 2; Doc. 7 at 4–5. By letter dated October 30, 2018, BCHD notified Ms. Woods of her appointment for her annual recertification meeting on December 5, 2018. *See* Doc. 7 at 4–5; Doc. 7-1. Ms. Woods states in her afficavit that she did not receive this letter because she was in the hospital. Doc. 14-2 ¶ 6. By letter dated December 5, 2018, BCHD reset her annual recertification meeting for December 13, 2018. Doc. 7-3. Ms. Woods called BCHD on December 13, 2018 to inform BCHD that she had been in and out of the hospital, and BCHD asked her to drop off her "packet" so they could process her recertification. Doc. 7-4. BCHD also left a telephone message for Ms. Woods on December 13, 2018 to let her

---

[1] Section 8 is also known as the "housing choice voucher program" and

> is the federal government's major program for assisting very low-income families, the elderly, and the disabled to afford decent, safe, and sanitary housing in the private market. Since housing assistance is provided on behalf of the family or individual, participants are able to find their own housing, including single-family homes, townhouses and apartments. . . .
>
> Housing choice vouchers are administered locally by public housing agencies (PHAs). The PHAs receive federal funds from the U.S. Department of Housing and Urban Development (HUD) to administer the voucher program.
>
> A family that is issued a housing voucher is responsible for finding a suitable housing unit of the family's choice where the owner agrees to rent under the program. . . .
>
> A housing subsidy is paid to the landlord directly by the PHA on behalf of the participating family. The family then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program.

Housing Choice Vouchers Fact Sheet, available at
https://www.hud.gov/program_offices/public_indian_housing/programs/hcv/about/fact_sheet (last visited July 17, 2020).

know that records showed her children were receiving Social Security again, and asking her to call back to discuss whether a repayment agreement needed to be done. *Id*. Ms. Woods states in her affidavit that she had her mother drop off the completed recertification packet at BCHD because she still was recovering from surgery. Doc. 14-2 ¶ 9. But a January 3, 2019 note in Ms. Woods' BCHD file indicates that Ms. Woods had not called back and had not dropped off the recertification packet. Doc. 7-4. On January 9, 2020, BCHD processed her file with the same information as the prior year. *Id*. Also on January 9, 2019, BCHD unsuccessfully attempted to call Ms. Woods and sent a notice by regular and certified mail proposing termination of her housing assistance. Docs. 7-4, 7-5, 7-6, 7-7. This notice stated:

> Due to the documentation Bernalillo County Housing obtained, it appears that you are in violation of the Section 8 Housing Assistance Program. This letter is to inform you that your Section 8 Housing Assistance is under proposed termination status for the following program violation(s) as stated in the CFR (Code of Federal Regulations): 982.551.
>
> Federal law states that the family (including each family member) must:
>
>> "The family must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and household composition in accordance with HUD requirements."

Doc. 7-5. Ms. Woods states in her affidavit that she never received the BCHD notice dated January 9, 2020. Doc. 14-2 ¶ 10. The certified mail copy of the notice was returned to BCHD. Doc. 7-6.

On January 30, 2020, BCHD issued its final decision for proposed termination, noting that Ms. Woods had not requested an informal hearing within 10 days of the January 9, 2020 proposed termination notice. Doc. 7-7. The termination was to take effect on February 28, 2019. *Id*. The notice was mailed to Ms. Woods by regular and certified mail, but the certified mail copy was returned to BCHD. *See* Docs. 7-4, 7-7, 7-8. This notice reiterated the statutory

3

language of 24 C.F.R. § 982.551, but like the prior notice, it did not include any specific description of what information had been requested by BCHD but not delivered by Ms. Woods. *See* Doc. 7-7.

On April 3, 2019, Ms. Woods filed a Petition for Writ of Certiorari in state district court. Doc. 7-2.  After being served with the state court petition, BCHD voided the "end of participation" of Ms. Woods' Section 8 benefits so that she would continue receiving her benefits pending the outcome of her appeal.   Doc. 7 at 6–7; Doc. 7-4.  The state court denied Ms. Woods' petition on December 20, 2019.   Doc. 7-9.   The state court held that it was without jurisdiction to hear the petition because Ms. Woods had not requested an informal hearing from BCHD.  *Id*.  On January 28, 2020, BCHD sent Ms. Woods a letter advising her that her Section 8 housing assistance would be terminated effective February 29, 2020.   Doc. 7-10.

Ms. Woods filed her Complaint for Damages and Declaratory and Injunctive Relief in state court on April 16, 2020.   Doc. 1-2.   Ms. Woods' complaint contains four counts: denial of due process by failing to provide sufficient notice (Count I); denial of due process rights based on abuse of discretion and arbitrary action (Count II); and denial of due process rights based on termination after waiver barred that termination (Count III); a request for declaratory and injunctive relief (Count IV).   *See id*.

In Count I, Ms. Woods alleges BCHD violated her due process rights by:   (1) failing to provide a notice containing an adequate factual statement of the reasons for terminating her housing assistance; (2) failing to ensure that she received written notice about her termination, thereby denying her the right to a pretermination hearing; (3) failing to include a copy of BCHD's informal hearing procedures with the termination notice; (4) engaging in a pattern and practice of failing to provide notices containing adequate factual statements of the reasons for

terminating housing participants from housing assistance; and (5) engaging in a pattern and practice of terminating housing participants despite knowledge that participants did not receive notices of termination.  Doc. 1-2 ¶¶ 49–57.  She alleges these failures violate the Due Process Clause of the 14th Amendment to the Constitution and Article II, § 18 of the New Mexico Constitution.  *Id.* ¶ 58.  Ms. Woods also alleges that by wrongfully terminating her Section 8 housing assistance, BCHD deprived her of rights secured by the laws of the United States, in violation of 42 U.S.C. § 1983.  *Id.* ¶ 59.

On June 8, 2020, Ms. Woods filed a Motion for Preliminary Injunction in state court.  Doc. 6-1.  The motion and reply request an injunction based on the due process violations alleged in Count I of her complaint, specifically focusing on the fact that BCHD failed to provide a notice containing an adequate factual statement of the reasons for terminating her housing assistance.  *See* Docs. 6-1, 14.  Because I recommend that the Court grant the motion for preliminary injunction based on BCHD's failure to provide adequate factual reasons for terminating her housing assistance, I do not address the other violations alleged in Count I of the complaint.[2]

---

[2] At the hearing, defendants argued that Ms. Woods cannot prevail merely by showing that the notice was factually insufficient.  *See* Doc. 34 at 30–36.  They argued that because Ms. Woods asserts that she did not receive the notices, she cannot have been harmed by the content of notices she says she never received.  *Id*.  Defendants raised this argument for the first time at the hearing.  This argument fails on both procedural and substantive grounds.  First, "issues may not be raised for the first time at oral argument." *Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010) (internal quotation omitted).  Second, even if the Court were to consider this argument, it is a non sequitur.  To meet due process requirements, a notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" **and** "must be of such nature as reasonably to convey the required information." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted).  Thus, Ms. Woods can prevail if either of these requirements are not met.  Ms. Woods' claim that she did not receive the notices goes to whether the notices were "reasonably calculated" to apprise her of the action.  Ms.

In her motion for preliminary injunction, Ms. Woods asks the Court to issue a preliminary injunction granting her the following relief:

 i. Requiring Defendant BCHD to continue making [housing assistance payments] during the pendency of this action;
 ii. Enjoining Defendant BCHD from terminating assistance during the pendency of this action;
 iii. Requiring Defendant BCHD to make the March, April, and May 2020 [housing assistance payments] that were not made.

Doc. 6-1 at 5. At the hearing, Ms. Woods amended her requested relief to request that BCHD be required to pay all of the missed housing assistance payments, which now includes the June and July payments. Doc. 34 at 12. For the reasons explained below, I recommend the Court grant the requested preliminary injunction.

## II.     Legal Standards

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (quotation and citation omitted). As such, "the movant must make a clear showing that he [or she] is entitled to the injunction." *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1252 (10th Cir. 2018) (quotation and citation omitted); *see Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (movant's right to relief must be "clear and unequivocal"); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (same); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (same).

To be entitled to a preliminary injunction, the moving party must establish the following:

> (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the

---

Woods' claim that the notices were factually insufficient goes to whether the notices reasonably conveyed the required information.

> preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.

*Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281; *Schrier*, 427 F.3d at 1258; *Heideman*, 348 F.3d at 1188.   "[A]ny modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."   *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1282.

The purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held."   *Schrier*, 427 F.3d at 1258 (quotation and citation omitted).   As such, the Tenth Circuit has identified three types of preliminary injunctions that are "specifically disfavored":   "(1) preliminary injunctions that alter the status quo[3]; (2) mandatory preliminary injunctions[4]; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.[5]"   *Id.* at 1259 (citation and quotation omitted); *Free the Nipple-Fort Collins*, 916 F.3d at 797.   Disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."   *Schrier*, 427 F.3d at 1259 (citation and quotation omitted); *see also Free the Nipple-Fort Collins*, 916 F.3d at

---

[3] The "status quo" in this context is the "last peaceable uncontested status existing between the parties before the dispute developed."   *Schrier*, 427 F.3d at 1260 (citation and quotation omitted).

[4] A "mandatory" injunction is one that "affirmatively requires the nonmovant to act in a particular way, and as a result places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction."   *Schrier*, 427 F.3d at 1261 (citation, quotation, brackets, and ellipses omitted).

[5] " '[A]ll the relief to which a plaintiff may be entitled' must be supplemented by a further requirement that the effect of the order, once complied with, cannot be undone."   *Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1247 (10th Cir. 2001) (citation and quotation omitted).

797 ("To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.") (citation and quotation omitted).

### III.     Analysis

As an initial matter, neither party discussed in the briefs whether Ms. Woods is requesting a mandatory preliminary injunction or some other type of disfavored injunction. *See* Docs. 6-1, 7, 14.[6] But to properly analyze Ms. Woods' motion, the Court first must determine whether she is seeking a disfavored preliminary injunction. Ms. Woods asks the Court to grant a preliminary injunction that would require BCHD to retroactively reinstate her housing assistance. *See* Doc. 6-1 at ¶ 23 (requesting preliminary injunction ordering BCHD to pay all of her missed housing assistance payments, and to continue making her housing assistance payments while this case is pending). Ms. Woods' requested preliminary injunction is not disfavored because it would disrupt the status quo—or "the last peaceable uncontested status existing between the parties before the dispute developed," *Schrier*, 427 F.3d at 1260.[7] Indeed,

---

[6] The Court asked the parties to address whether the requested injunction was mandatory at the hearing. Doc. 26. Ms. Woods argued that the injunction was not mandatory because the injunction would preserve the status quo by requiring BCHD to continue making payments, (something that they had been doing) and because granting the injunction would not require the Court to provide oversight. Doc. 34 at 22–23. Defendants argued that the injunction is mandatory because it would require them to take action and make payments. *Id*. at 26–28.

[7] At the hearing, defendants argue that the requested injunction would alter the status quo, positing that the status quo is the situation as it currently exists, that is, with Ms. Woods not receiving benefits. Doc. 34 at 27–29. This is not correct. *See Schrier,* 427 F.3d at 1260 (status quo is "the last peaceable uncontested status existing between the parties before the dispute developed"). Defendants further claim that for disfavored preliminary injunctions, a movant must show that all four factors weigh "heavily and compellingly in movant's favor" before granting the injunction. Doc. 7 at 2 (citing *Salt Lake Tribune Publishing Co. v. AT&T Corp.*, 320 F.3d 1081, 1099 (10th Cir. 2003)). This also is not correct. *See Free the Nipple-Fort Collins,* 916 F.3d at 797 ("we jettison[ed] the heavily-and-compellingly requirement over a

if granted, the motion would restore the status quo.  "[H]owever, injunctions are not necessarily prohibitory [as opposed to mandatory] merely because they preserve the status quo." *Id.* (citation omitted).

Indeed, when defendants have "complete[d] the acts sought to be enjoined," courts must use a mandatory injunction to "restore the status quo." *Id.*  Mandatory injunctions order the non-moving party to "peform an act," while prohibatory injunctions require the non-movant to "refrain from performing." *Id.* (quotation and citation omitted).  A mandatory injunction "affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction*.*" *Id.* at 1261.  In *Schrier*, the Tenth Circuit found that Dr. Schrier's request to be reinstalled as the Chair of the Department of Medicine, which would have restored the status quo, was mandatory because it "affirmatively require[d] the [University] to act in a particular way" and would have required the court to provide ongoing supervision. *Id.*  Similarly here, granting Ms. Wood's request for a preliminary injunction to reinstate her housing assistance, which would restore the status quo, is mandatory because it would affirmatively require BCHD to act in a particular way, and would require ongoing supervision by the Court.   While this supervision would be minimal, as defendants conceded at the hearing, Doc. 34 at 23, the Court finds that the requested preliminary injunction is mandatory in nature.

Because Ms. Woods is requesting a mandatory injunction—a disfavored type of injunction—she "faces a heavier burden on the likelihood-of-success-on-the-merits and the

---

decade ago. . . . and the requirement that a movant requesting a disfavored injunction must make a showing that the traditional four factors weigh heavily and compellingly in [the movant's] favor is no longer the law of the circuit." (internal quotation marks and citations omitted)).

9

balance-of-harms factors: She must make a strong showing that these tilt in her favor." *Free the Nipple-Fort Collins*, 916 F.3d at 797.

Ms. Woods asserts the Court should use the "sliding scale" test laid out in *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246–47 (10th Cir. 2001) wherein a party establishing the other three factors for a preliminary injuction need not show a "substantial likelihood of success" on the merits but "need only prove that there are 'questions going to the merits . . . so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." Doc. 14 at 1–2, 8; *see also* Doc. 7 at 2 (defendants cite same). The Court declines to use this "sliding scale" test. First, this test does not apply to mandatory injunctions. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1003 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) ("[T]he movant for a mandatory preliminary injunction must also establish a substantial likelihood of success on the merits.") Second, in *Diné Citizens against Ruining our Environment*, 839 F.3d at 1282, the Tenth Circuit recognized that this "sliding scale" test was "inconsistent" with Supreme Court precedent and held that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."

### A. Likelihood of Success on the Merits

In order to satisfy the likelihood-of-success-on-the-merits factor, "the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he [or she] will ultimately be entitled to the relief sought." *Automated Mktg. Sys., Inc. v. Martin*, 467 F.2d 1181, 1183 (10th Cir. 1972); *see also Planned Parenthood Assoc. of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016) ("Although [t]he courts use a bewildering variety of

10

formulations of the need for showing some likelihood of success, [a]ll courts agree that plaintiff must present a prima facie case but need not show a certainty of winning." (internal quotation marks and citations omitted)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Section 8 benefits are a property interest subject to the protection of the Constitution's Due Process Clause. *Nozzi v. Hous. Auth. of City of Los Angeles*, 425 F. App'x 539, 541–42 (9th Cir. 2011); *Swann v. Gastonia Hous. Auth.*, 675 F.2d 1342, 1346 (4th Cir. 1982) ("It is now beyond question that [Section 8] entitlements are protected by the due process clause."). Accordingly, procedural due process requires that any termination of Section 8 benefits must "be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane,* 339 U.S. at 313); *see also Goldberg v. Kelly*, 397 U.S. 254, 266–68 (1970) (stating that due process "principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination" and finding no constitutional deficiency in termination notices that contain both the "legal **and** factual bases" for termination (emphasis added)); *see also* 24 C.F.R. § 982.555(c)(2) (before terminating Section 8 assistance, a housing authority must give "prompt written notice that the family may request a hearing" and the notice must "[c]ontain a brief statement of reasons for the decision.").

Ms. Woods argues that defendants violated her due process rights in terminating her Section 8 benefits because they sent her a "factually insufficient notice."[8]  Doc. 14 at 8.  The notice BCHD mailed to Ms. Woods on January 9, 2020 stated the following:

> Due to the documentation Bernalillo County Housing obtained,[9] it appears that you are in violation of the Section 8 Housing Assistance Program.  This letter is to inform you that your Section 8 Housing Assistance is under proposed termination status for the following program violation(s) as stated in the CFR (Code of Federal Regulations): 982.551.
>
> Federal law states that the family (including each family member) must:
>
>> "The family must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and household composition in accordance with HUD requirements."

Doc. 7-5.[10]  The January 30, 2020 notice sent by BCHD reiterated the statutory language of 24 C.F.R. § 982.551, but again, did not include any factual description of what information had been requested by BCHD but not delivered by Ms. Woods.  *See* Doc. 7-7.

Ms. Woods relies on two recent cases holding that BCHD's notices violate procedural due process because they are factually insufficient.  First, she cites a case from the State of New

---

[8] Ms. Woods also argues that she did not receive the notice.  Doc. 14 at 8.  Because the Court finds that the contents of the notice do not meet the requirements of due process, the Court does not address Ms. Woods' claim that she did not receive the notice.

[9] BCHD's reference to documentation it obtained is confusing.  BCHD's position is that Ms. Woods did not drop off any documentation.  Doc. 7 at 5; Doc. 7-4.  Ms. Woods' position is that she had her mother drop off the requested documentation.  Doc. 14-2 at ¶ 9.  BCHD's failure to describe what documentation Ms. Woods failed to deliver renders the notice inadequate to comport with procedural due process requirements.

[10] The quoted language (other than the word household) is identical to 24 C.F.R. § 982.551(b)(2) ("The family must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition in accordance with HUD requirements.").

12

Mexico Second Judicial District Court: *Armendina Carrillo v. Board of County Commissioners of the County of Bernalillo*, D-202-CV-2018-07345 (June 28, 2019). Doc. 6-1 at 5 n.3. In that case, the court found that a notice from BCHD that merely quoted the regulation without providing any factual description of the basis for terminating plaintiff's housing violated due process because it

> does not give adequate notice of the basis for the action. The notice simply quotes the regulation. The regulation provides four categories of wrongful conduct that allow for termination—fraud, bribery, a corrupt act, or a criminal act. The notice does not identify which category of wrongful conduct is the basis for the action and it provides no factual basis whatsoever. An individual receiving this notice would be unable to determine the nature of the allegations and therefore [would be] unable to adequately prepare to address them at the termination hearing.

*Carrillo*, D-202-CV-2018-07345, June 28, 2019 Memorandum Opinion and Order, at 6.

Second, Ms. Woods cites a recent decision from this Court which held that a notice containing the exact same language that is at issue in this case violated due process rights by "not providing factually specific reasons for terminating Section 8 housing" assistance. Doc. 14 at 9 (citing *Mazzola v. Bd. Of Cnty. Comm'r of the Cnty. Of Bernalillo*):

> Courts have concluded that other notices that merely "parrot[] the broad language of applicable regulations" are insufficient when depriving parties of Section 8 benefits. *McCall v. Montgomery Hous. Auth.*, 809 F. Supp. 2d 1314, 1325 (M.D. Ala. 2011) (Fuller, J.). *See Young v. Maryville Hous. Auth.*, No. 3:09-CV-37, 2009 WL 2043891, at *6 (E.D. Tenn. July 2, 2009) (Guyton, Mag. J.). *See also Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). The letter sent to Mazzola by the Housing Department merely stated the regulation Mazzola violated without including factually specific details that could afford her an opportunity to prepare and present objections. The regulation refers to two distinct areas of information a participant family must provide to public housing officials: information on "family income" and information on the family's "composition." 24 C.F.R. § 982.551(b)(2). A letter citing only this regulation does not, therefore, provide the recipient with sufficient notice of the reasons for termination before the hearing. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. at 314.

*Mazzola*, No. 18cv760 JB-JHR, Doc. 30 at 4 (Sept. 30, 2019).[11]

As in *Mazzola*, the letters BCHD sent to Ms. Woods merely stated the regulation she violated without including any details that could afford her the opportunity to prepare and present objections.   And, unlike the notice containing "both legal and factual bases" which was found sufficient in *Goldberg*, 397 U.S. at 266–68, the notice sent to Ms. Woods contained no factual bases for the termination of her housing assistance.   The reasoning in *Carrillo* and *Mazzola* is sound, and it is therefore probable that Ms. Woods will prevail on the merits of her due process claim in this case.   I therefore find that Ms. Woods has presented "a prima facie case showing a reasonable probability that [s]he will ultimately be entitled to the relief sought." *Automated Mktg. Sys., Inc.*, 467 F.2d at 1183.

Ms. Woods has met her burden of making a strong showing that she is likely to prevail on the merits.   Defendants argue that Ms. Woods "has not demonstrated a substantial likelihood of success on the merits."   Doc. 7 at 8.   However, defendants fail to point to any case law showing

---

[11] Ms. Woods filed a notice of supplemental authority to inform the Court of another recent state court opinion that similarly held that a notice identical to the one sent to Ms. Woods "fails to comport with federal regulations and fails to comply with minimum due process requirements." *See* Doc. 25 (citing *Patricia Flanders v. Board of County Commissioners of the County of Bernalillo o/b/o Bernalillo County Housing Dept.*, D-202-CV-2019-8483 (June 25, 2020)); *see also* Doc. 25-1 at 8 (copy of Memorandum Opinion and Order in *Flanders*).   Defendants contend that *Flanders* is different because the plaintiff in the *Flanders* case requested an informal hearing.   Doc. 30 at 1.   Defendants also point out that "[w]hile a state court judge may have [determined that the notice failed to comply with minimum due process requirements], it is certainly possible Judge Kelly could find notice was proper given all of the circumstances."   *Id.* Defendants further question whether a § 1983 claim can rest on a federal regulation rather than a right conferred by the Constitution or a federal statute.   *Id.*   I find that the *Flanders* decision is additional persuasive authority that the notice sent to Ms. Woods was constitutionally inadequate; the fact that there was an informal hearing in *Flanders* only gave the Court more information as to why the notice was insufficient.   The Court will not address the question as to whether a § 1983 claim can rest on a federal regulation as defendants did not raise this issue in their response, and it is not adequately briefed.

that a different outcome is likely, or that the cases Ms. Woods cites are not indicative of the likely outcome in this case.  *See* Doc. 7.  At the hearing, defendants stated they did not have any cases holding that notices which only cite the regulations and do not provide any factual bases complied with due process requirements.  Doc. 34 at 32–34.  The Court therefore finds that Ms. Woods has met the heightened burden of making a strong showing that this factor tilts in her favor.

### B.  Irreparable Harm

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Heideman*, 348 F.3d at 1189 (internal quotation and citation omitted).  "Any deprivation of any constitutional right fits th[e] bill."  *Free the Nipple-Fort Collins*, 916 F.3d at 806 (citation omitted); *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed.1995)).

In addition, "[a] plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."  *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) (citation omitted).  Ms. Woods asserts that she will suffer irreparable harm if the preliminary injunction is not granted because she "faces the imminent risk of homelessness."  Doc. 14 at 7.  In a sworn affidavit, Ms. Woods states that since BCHD stopped her Section 8 benefits in February 2020, she has been struggling to pay her $1100 monthly rent out of her $1258 total monthly income—leaving her unable to pay other bills, and without enough money to purchase food.  Doc. 14-2 ¶¶ 2, 4, 15, 17.  Ms. Woods is a disabled

single mother, Doc. 14-2 ¶ 1, and she stated at the hearing that she has two children living with her, Doc. 34 at 25–26.  Ms. Woods' landlord Robyn Sanchez stated in a sworn affidavit that Ms. Woods has been struggling to pay the full $1100 month rent, and that although she has been trying to work with Ms. Woods, if she does not receive the full monthly rent going forward, she will be forced to evict Ms. Woods in order to pay her mortgage on the property.  Doc. 14-6 ¶¶ 7, 8, 9, 10, 11.

Defendants argue that Ms. Woods' "assertions of possible future events fail to show an irreparable injury, which must be actual and imminent, rather than rest on conjecture or a mere possibility of harm."  Doc. 7 at 8 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).[12]  The Court finds that Ms. Woods has shown more than a mere "possibility" of harm; she has shown that irreparable injury is highly "likely in the absence of an injunction."  *Winter*, 555 U.S. at 22; *see also Goldberg*, 397 U.S. at 264 ("termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits.  Since he lacks independent resources, his situation becomes immediately desperate.").

### C.  Balance of Harms

Because Ms. Woods seeks a mandatory injunction, she must make a "strong showing" that the balance-of-harms factor tilts in her favor.  *Free the Nipple-Fort Collins*, 916 F.3d at

---

[12] In their response, defendants also argued that Ms. Woods failed to submit a verified complaint or affidavits and therefore had no competent evidence.  Doc. 7 at 7.  At the scheduling conference held on June 25, 2020, the Court noted that Ms. Woods had filed additional evidence with her reply in order to meet the federal requirements for a preliminary injunction after the case was removed.  Doc. 19.  The Court offered defendants the opportunity to file a surreply, but defendants declined.  *Id.*

16

797. The Court finds she has met this heightened burden. Ms. Woods, a disabled single mother, has shown that absent the injunction issuing, she will be forced to choose between paying her full $1100 rent to avoid being evicted and becoming homeless, or paying her other bills and buying food for her family. Doc. 14-2, ¶¶ 1, 2, 4, 17, 18, 19; Doc. 14-6 ¶¶ 7, 8, 9, 11, 12. BCHD's harms, on the other hand, would be monetary. Doc. 6-1 ¶ 27. Notably, defendants did not argue in their response that they would suffer any harm if the injunction is granted. *See generally* Doc. 7 (response silent on issue of harm to defendants).[13] The Court therefore finds that Ms. Woods has met her burden and has made a strong showing that the balance of harms tilts in her favor. This factor weighs in favor of granting the injunction.

### D. Public Interest

An injunction must "not be against the public interest." *Free the Nipple-Fort Collins*, 916 F.3d at 807. And "it's always in the public interest to prevent the violation of a party's constitutional rights." *Id*. (internal quotation marks omitted). Ms. Woods also argues that "it is in the public interest that Ms. Woods and her family not be homeless, especially during the ongoing Coronavirus pandemic." Doc. 6-1 ¶ 28. Defendants offer no arguments that an injunction would be against the public interest. *See generally* Doc. 7. Given that Ms. Woods has shown a likelihood of prevailing on her claim that her constitutional due process rights have

---

[13] At the hearing, for the first time, defendants argued that if Ms. Woods prevails, BCHD would be harmed because more terminated Section 8 recipients will file due process claims in federal court to try to re-obtain Section 8 assistance. Doc. 34 at 38. First, "'issues may not be raised for the first time at oral argument.'" *Dodds*, 614 F.3d at 1208. Second, the Court does not find seeking justice to be a "harm." The best way for BCHD to avoid these due process claims in the future is to revise its notices to comply with due process requirements, which defense counsel admitted BCHD already has done. *See* Doc. 34 at 35–36 (stating that BCHD has made the "subsequent remedial measure" of including both facts and law in its more recent termination notices).

been violated, and the public's interests in keeping families housed, the Court finds that Ms. Woods has met her burden of showing that an injunction would not be against the public interest. This factor weighs in favor of granting the injunction.

### IV. Conclusion

The factors support the issuance of a preliminary injunction in this case. Ms. Woods has met her burden of making a strong showing of likelihood of success on the merits. Further, she has shown that she will be irreparably harmed if the injunction is not issued, that the balance of harms tilts strongly in her favor, and that an injunction is not against the public interest.

I therefore recommend that the Court grant the following relief:

> i. Order BCHD to continue making Ms. Woods' housing assistance payments during the pendency of this action;
> ii. Enjoin BCHD from terminating Ms. Woods' housing assistance during the pendency of this action;
> iii. Order BCHD to make all of Ms. Woods' housing assistance payments that have not been made, beginning with the March 2020 payment.

Finally, the Court has considered whether the imposition of a bond is appropriate in this case. "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). "Trial courts have wide discretion under Rule 65(c) in determining whether to require security." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (internal quotation and citation omitted). I do not recommend that the Court require Ms. Woods to pay a bond in this case, given her financial position, and the fact that defendants have failed to allege any true harm to them from granting the injunction.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).   Written objections must be both timely and specific.   *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).   A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.   In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge